UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DISH NETWORK CORPORATION, as Plan Administrator and on behalf of DISH NETWORK CORPORATION 401(K) PLAN,<br><br>Plaintiff in Interpleader,<br><br>v.<br><br>DEBRA POMPA and ROY LOHRENGEL,<br><br>Defendants/Crossclaimants in Interpleader. | Case No. 2:17-cv-1601-KJD-CWH<br><br>**ORDER** |

Before the Court is Debra Jean Pompa's Motion for Summary Judgment (ECF No. 43) to which Roy Lohrengel responded (ECF No. 45), and Pompa replied (ECF No. 46). In this interpleader action, Dish Network asks the Court to determine whether Debra Pompa or Roy Lohrengel is entitled to non-party Larry Lohrengel's Dish Network 401(k) retirement account. Larry Lohrengel passed away on July 25, 2012. Before Larry's death, Debra Pompa became beneficiary to Larry's Dish Network retirement account, which was governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). As the sole beneficiary, Pompa believed herself to be entitled to 100% of the plan proceeds. Larry's father, and interpleaded defendant Roy Lohrengel, claims that Pompa's beneficiary designation is void under NRS § 155.097 because Pompa qualified as Larry's caregiver and was therefore not entitled to become his beneficiary. Roy also claims that Pompa must have fraudulently obtained her designation as beneficiary because his son did not understand how to use a computer, nor was he well enough to make such a change to his retirement account.

The primary question posed by Pompa's motion is whether ERISA preempts NRS § 155.097. Section 155.097 would presumptively void Pompa's designation as beneficiary because she qualified as his "caretaker" at the time. It would also shift the burden from Roy to

1   Pompa to show that her designation was not fraudulent. For the reasons below, the Court finds
2   that NRS § 155.097 shares an impermissible connection with an ERISA-based plan and therefore
3   falls within ERISA's broad preemption provision. Further, the Nevada statute conflicts with
4   ERISA's overall goal of creating a uniform system of employee benefit plans. The burden of
5   proof, therefore, rests with Roy Lohrengel to prove that Pompa's designation was fraudulent.
6   Roy has not produced evidence to create a genuine issue of fact on that issue. Accordingly, the
7   Court grants Pompa's motion for summary judgment and finds that she is the sole beneficiary to
8   Larry's Lohrengel's Dish Network 401(k) retirement account.

9   **I.     Background**

10  Larry Lohrengel died of pancreatic cancer on July 25, 2012. Mot. Summ. J. 4, ECF No.
11  43. Before his death, Larry worked as an installer for Dish Network Corporation and participated
12  in the Dish Network 401(k) retirement program. The Dish Network 401(k) plan was a qualifying
13  employee benefit plan under 29 U.S.C. § 1002 of the Employee Retirement Income Security Act
14  of 1974. Id. at 3. As such, the plan documents and regulations were governed by ERISA. As a
15  plan participant, Larry was free to designate individual beneficiaries to his 401(k) account. He
16  could do so by filing a beneficiary designation form with the company through the plan's
17  website. Id. at 4. The plan's governing documents clarified that if the account listed no
18  beneficiary, the account funds would pass to the participant's surviving spouse, children, and
19  parents in that order. Dish Network Plan Docs. 10, ECF No. 43-3 ("Plan Docs").

20  Debra Pompa was designated beneficiary to Larry's 401(k) plan on June 26, 2012. The
21  designation was made on the plan's website. It listed Pompa as Larry's "domestic partner" and
22  made her the 100% primary beneficiary. Plan Docs at 9. Though not married, Larry and Pompa
23  shared a "long-term, cohabitating relationship." Mot. Summ. J. at 4. The two were together for
24  about ten years in California and Nevada, and Pompa lived with Larry until his death in July of
25  2012. Id. Larry's father, Roy Lohrengel, also moved in with Larry and Pompa towards the end of
26  Larry's life to help with his care. However, at the time of Larry's death, only Pompa was listed
27  as a beneficiary under the plan.

28

1          The parties dispute whether Larry made the beneficiary change himself or whether
2  Pompa used Larry's login credentials to designate herself beneficiary. According to Pompa,
3  Larry intended to list her as a beneficiary before he died. She claims that Larry told her of his
4  plan to leave his 401(k) balance to her and that that Larry personally logged in and designated
5  her primary beneficiary. Pompa Decl. ¶¶ 18–19, ECF No. 43-1. According to Pompa, Larry was
6  lucid and well enough to understand what he was doing and desired the change. Id. Roy
7  Lohrengel does not believe his son was well enough to make the beneficiary change. And if
8  Larry was well enough, Roy believes that he was not literate enough with his computer to
9  understand the plan's website. Roy Lohrengel Depo. 54, ECF No. 43-5. Roy is convinced that
10 Pompa's beneficiary status must be illegitimate. Roy stands to receive Larry's 401(k) funds
11 under the plan rules if Pompa's beneficiary designation is voided.
12         Sensing the potential for competing claims to Larry's account balance, Dish Network
13 brought this interpleader action. See Compl., ECF No. 1. The interpleader complaint asks the
14 Court to determine which of the interpleaded defendants, Roy or Pompa, has a right to the
15 account assets. It also asks the Court to enjoin both defendants from suing Dish Network or any
16 of its subsidiaries and to fully discharge Dish Network from all liability under the plan. Id. at 6.
17 Roy and Pompa answered Dish Network's complaint and asserted competing crossclaims for
18 declaratory relief. See ECF Nos. 13, 15. Pompa has once moved for summary judgment, arguing
19 that Roy's fraud-based crossclaim was barred by Nevada's three-year statute of limitations. See
20 Mot. Summ. J. 8. The Court denied the motion. Order, ECF No. 36. The parties have since
21 completed discovery, and Pompa again seeks summary judgment.
22         **II.      Legal Standard**
23         The purpose of summary judgment is to isolate and dispose of factually unsupported
24 claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). It is available only
25 where the absence of material fact allows the Court to rule as a matter of law. Fed. R. Civ. P.
26 56(a); Celotex, 477 U.S. at 322. Rule 56 outlines a burden shifting approach to summary
27 judgment. First, the moving party must demonstrate the absence of a genuine issue of material
28 fact. The burden then shifts to the nonmoving party to produce specific evidence of a genuine

1  factual dispute for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587
2  (1986). A genuine issue of fact exists where the evidence could allow "a reasonable jury [to]
3  return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
4  (1986). The Court views the evidence and draws all available inferences in the light most
5  favorable to the nonmoving party. Kaiser Cement Corp. v. Fischbach & Moore, Inc., 793 F.2d
6  1100, 1103 (9th Cir. 1986). Yet, to survive summary judgment, the nonmoving party must show
7  more than "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

**III.    Discussion**

As always, the question at summary judgment is whether there are disputed issues of material fact that necessitate trying the case on its merits. Much of that analysis depends upon which party bears the burden of proof on the pending claims. Both Pompa and Roy bring the same declaratory relief crossclaim. Roy's crossclaim hinges on his allegations that Pompa fraudulently obtained her designation as Larry's beneficiary. Generally, that would rest the burden of proof on Roy to demonstrate the absence of material fact as to Pompa's fraudulent behavior. See Nayab v. Capital One Bank (USA), N.A., 942 F.3d 480, 494 (9th Cir. 2019) (where statute is silent, courts defer to the "default rule that plaintiffs bear the risk of failing to prove their claims").

Here however, Roy argues that NRS § 155.097 presumptively voids Pompa's beneficial interest because her status as Larry's caregiver rendered her ineligible to be beneficiary. Section § 155.097's presumption of ineligibility effectively shifts the burden of proof from the party claiming fraud (Roy) to the transferee (Pompa). See NRS § 155.097(3). If NRS § 155.097 applies, Roy would not have to produce any evidence of fraud. Instead, the burden would rest with Pompa to show that her beneficiary designation was *not* fraudulent. Pompa counters that NRS § 155.097 does not apply here because it is preempted by ERISA and that Roy has not produced any evidence of fraud. Pompa is correct.

*A.   ERISA Preemption Generally*

To say that the field of ERISA preemption is murky would be an understatement. See Dishman v. UNUM Life Ins. Co. of Am., 269 F.3d 971, 980 (9th Cir. 2001) ("the amorphous

1   contours of the preemption doctrine present a problem with which we must deal head-on").
2   Though ERISA boasts one of the "broadest preemption clauses ever enacted by Congress," the
3   cases applying the preemption clause have struggled to identify clear standards for which state
4   laws must give way for ERISA. PM Grp. Life Ins. Co. v. Western Growers Assur. Tr., 953 F.2d
5   543, 545 (9th Cir. 1992). At once, those cases have advocated Congress's intent to make ERISA
6   the national standard for the administration of employee benefit plans (N.Y. State Conf. of Blue
7   Cross & Blue Shield Plans v. Travelers Ins. Co., 515 U.S. 645, 657 (1995)) while cautioning
8   against "uncritical literalism" that would "make pre-emption turn on 'infinite connections.'"
9   Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 147 (2001). ERISA preemption is seemingly
10  broad but not too broad. Despite the uncertainty, the cases have identified certain guideposts that
11  ferry the Court through ERISA's preemption clause. As always, the Court starts with the text of
12  statute.

13      Title 29 U.S.C. § 1144(a) sets out ERISA's preemption clause. It states that ERISA's
14  provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to
15  any employee benefit plan." 29 U.S.C. § 1144(a). Congress broadly drafted the statute at every
16  turn. Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1439 (9th Cir. 1990) ("one of the broadest
17  preemption clauses ever enacted by Congress"). ERISA preempts "*[a]ny and all*" state laws that
18  currently or may in the future "relate to *any* employee benefit plan." 29 U.S.C. § 1144(a)
19  (emphasis added). Congress did not except any class of state law from preemption and implicitly
20  considered state laws that may not currently conflict but may conflict with an ERISA plan
21  "hereafter." According to § 1144(a), the only limitation on ERISA's preemption power is that
22  offending state law must currently or in the future "relate to any employee benefit plan."

23      What does it mean for a state law to "relate" to an ERISA-governed employee benefit
24  plan? The answer is unclear. Travelers, 514 U.S. at 655 ("we have to recognize that our prior
25  attempt to construe the phrase 'relate to' does not give us much help drawing the line here").
26  However, the Supreme Court has specified that a state law relates to an employee benefit plan
27  when it "has a connection with or reference to" such a plan. Shaw v. Delta Air Lines, Inc., 463
28  U.S. 85, 97 (1983). The "connection with or reference to" language has prompted two separate

tests. A state law shares a connection with an ERISA-governed plan if the state law claim "bears on" that relationship. This has come to be known as the "relationship test." The key consideration here is whether the state law regulates "certain *relationships*: for instance, the relationship between plan and plan member, between plan and employer, between employer and employee . . . and between plan and trustee." Gen. Am. Life Ins. Co. v. Castonguay, 984 F.2d 1518, 1521 (9th Cir. 1993). State laws that interfere with those relationships are generally preempted because they are "particularly likely to interfere with ERISA's scheme." Id. As for whether the state law references an employee-sponsored plan, the Court applies the premise test. The premise test asks whether the state law claim is premised on the existence of an ERISA plan and whether the existence of the plan is "essential to the claim's survival." Providence Health Plan v. McDowell, 385 F.3d 1168, 1172 (9th Cir. 2004). If so, the state claim sufficiently references ERISA and is preempted.

Courts have applied these tests to varying results. Compare Egelhoff, 532 U.S. at 150 (ERISA preempting a Washington statute that automatically terminated spouse's beneficiary designation upon divorce), Shaw, 463 U.S. at 108–09 (ERISA preempting New York statute that required plan payments to individuals that federal law did not require), FMC Corp. v. Holliday, 498 U.S. 52, 58–59 (1990) (ERISA preempting Pennsylvania's subrogation law related to an ERISA-governed insurance plan), Carmona v. Carmona, 603 F.3d 1041, 1062 (ERISA preempting a Nevada constructive trust intended to avoid a qualified domestic relations order enforceable under ERISA), with Travelers, 514 U.S. at 661 (ERISA did not preempt New York statute requiring hospitals to collect surcharges from commercial insurers because the statute shared too tenuous a relationship to ERISA-governed plans), Dishman, 269 F.3d at 983 (ERISA did not preempt California tort for unreasonably intrusive investigation because the claim did not depend upon an ERISA benefits claim in any meaningful way).

Though seemingly inconsistent, one common thread is woven through each of the above cases. ERISA seems to preempt any state law that would require plan administrators to alter plan administration to comply with various state laws. Indeed, the "fatal flaw" in state laws preempted under ERISA is that "they require[] deviation from the norm; to comply with them, plans

necessarily [have] to vary their administration of benefits state by state." Dishman, 269 F.3d at 982. That makes sense, considering that the "basic thrust of the pre-emption clause [is] to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." Travelers, 514 U.S. at 657. Accordingly, a state law that undermines ERISA's purpose to promote a uniform administration of employee benefit plans shares in impermissible connection with or reference to ERISA and is preempted.

### B.    *ERISA Preempts NRS § 155.097*

Having settled on the applicable test, the Court next considers whether NRS § 155.097 shares an impermissible connection with the ERISA-governed Dish Network 401(k) plan. As an initial matter, the Court notes that Roy Lohrengel's crossclaim against Pompa is not a claim under § 155.097 necessarily. Roy's crossclaim seeks a declaration that he is entitled to the assets held in Larry Lohrengel's because § 155.097 presumptively invalidates Pompa's beneficiary designation. Although Roy's claim is for declaratory relief, the beneficiary designation under § 155.097 is the determining factor, and the preemption issue effectively resolves that issue. Therefore, the Court will analyze § 155.097 to determine whether it shares an impermissible connection with Larry's ERISA-governed plan.

NRS § 155.097 presumptively invalidates a beneficiary designation to an adult caretaker. At the time of Larry's beneficiary change and his death, the statute defined "caretaker" as "any person who has provided significant assistance or services to or for a person . . . regardless of whether the person is being compensated for the assistance or services provided." NRS § 155.0935 (2013). The Nevada legislature would later amend the definition to only include caretakers who provide their services for remuneration. NRS § 155.095 (2015). However, at the time of Larry's death, Pompa undoubtedly qualified as a caregiver under § 155.095's plain language. As a result, NRS § 155.097 would presumptively void Pompa's beneficiary designation unless she could show by clear and convincing evidence that the designation was legitimate.

Pompa points out that neither Dish Network's 401(k) plan documents nor ERISA itself contains such a restriction on Pompa based on her status as caregiver. If ERISA preempted NRS

- 7 -

§ 155.097, the burden would remain with Roy Lohrengel to prove Pompa's designation was fraudulent and not on Pompa to prove that it was legitimate.

The question then is whether NRS § 155.097 shares an impermissible connection with or reference to the Dish Network employee benefit plan. At its core, § 155.097 injects itself into the relationship between an ERISA-governed plan and the plan participant. By presumptively invalidating a plan participant's beneficiary selection, the Nevada law alters to whom the plan may pay proceeds. That is exactly the type of interference the ERISA preemption clause sought to avoid. After all, "the key to distinguishing between what ERISA preempts and what it does not lies . . . in recognizing that the statute comprehensively regulates certain *relationships*" such as the relationship between the ERISA-governed plan and a plan member. Castonguay, 984 F.2d at 1521. Therefore, NRS § 155.097 shares an impermissible connection with an ERISA plan.

That conclusion is further supported by the Supreme Court in Egelhoff. There, the Court evaluated a Washington statute that automatically invalidated a spouse's beneficiary designation upon the couple's divorce. Egelhoff, 532 U.S. at 144 (discussing Wash. Rev. Code § 11.07.010(2)(a) (1994)). If a divorced spouse was listed as beneficiary of the decedent's assets, the statute required courts to treat the divorced spouse as having pre-deceased their spouse. Id. Like here, the Washington statute had an impermissible connection with ERISA plans because it "[bound] ERISA plan administrators to a particular choice of rules for determining beneficiary status." Id. at 147. In so doing, the Washington statute interfered with ERISA's principle goals "to establish a uniform administrative scheme" to process claims and disburse benefits. Id. at 148 (citing Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 9 (1987)). Such uniformity is impossible if plan administrators are subject to varying legal obligations state by state. Stated more explicitly, "Egelhoff stands for the proposition that a state law cannot invalidate an ERISA plan beneficiary designation by mandating distribution to another person." Carmona v. Carmona, 603 F.3d 1041, 1061 (9th Cir. 2010) (citing Melton v. Melton, 324 F.3d 941, 945 (7th Cir. 2003) (citations omitted)).

NRS § 155.097 presents the same issue here as the Washington statute in Egelhoff, namely that a state law cannot force a plan administrator to make a distribution to someone other

than the plan participant's listed beneficiary. The alternative would eliminate the uniform system of administration ERISA sought to impose because plan administrators would have to read past the plan documents' beneficiary designation to apply applicable state law to that participant's plan. Such an imposition on ERISA-governed plans violates its preemption clause. Accordingly, NRS § 155.097 is superseded by ERISA to the extent that it attempts to void the beneficiary designation of an ERISA-governed plan.

The practical result of NRS § 155.097's preemption is that the burden of proof does not shift from Ray Lohrengel to Pompa to demonstrate that her status as a beneficiary under the Dish Network 401(k) plan was legitimate. The burden remains with Ray to demonstrate that Pompa fraudulently obtained her beneficiary status.

### C. There is no Genuine Issue of Material Fact

The mere fact that ERISA preempts NRS § 155.097 does not mandate summary judgment in Pompa's favor. If it were so, there would be no recourse for fraudulent beneficiary designations in ERISA-governed plans as ERISA is silent on the procedures related to beneficiary changes. See SunTrust Bank v. Aetna Life Ins. Co., 251 F. Supp. 2d 1282, 1292 (E.D. Va. 2003). Where ERISA is silent, the Court looks to federal common law to fill in the gaps. Id. The Court only looks to state law where the federal common law is also silent. See Schreffler v. Metro. Life Ins. Co., No. CV 04-1561-PCT-SMM, 2006 WL 1127096 (D. Ariz. Apr. 25, 2006) (citing Tinsley v. Gen. Motors Corp., 227 F.3d 700, 704 (6th Cir. 2000)). Therefore, if Roy can demonstrate a genuine issue of material fact that Pompa fraudulently designated herself beneficiary to Larry's 401(k) plan, he will survive summary judgment.

As the movant here, Pompa must first produce evidence foreclosing any issue of fact that she is the legitimate beneficiary under Larry's 401(k). If she does so, the burden shifts to Roy to produce his own evidence of a material fact warranting a trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Though the evidence need not be in an admissible form now (see Nev. Dept. of Corrections v. Green, 648 F.3d 1014, 1019 (9th Cir. 2011)), it must set out facts that "would be admissible in evidence" at the time of trial. Fed. R. Civ. P. 56(c)(4).

1        For her part, Pompa submits the beneficiary designation form showing that at the time of
2   Larry Lohrengel's death, she was the 100% primary beneficiary. Plan Docs at 9, ECF No. 43-3.
3   On its face, the beneficiary form is valid. Pompa also submits sworn testimony that she was
4   present when Larry updated his beneficiary designation (Pompa Decl. ¶¶ 18–19, ECF No. 43-1),
5   that she did not know the login credentials to Larry's 401(k) account (Pompa Decl. ¶ 21), and
6   that Larry was well enough to get out of bed and use a computer at the time he made the
7   beneficiary change (Pompa Decl. ¶ 22). Pompa also claims that Larry expressed to her his desire
8   to make her beneficiary and that she purposefully left the house to avoid the appearance of
9   impropriety. Id. ¶ 18–19. Pompa also produced evidence that Larry was physically and mentally
10  well enough on June 26, 2012, to make the beneficiary change. Larry's medical records from the
11  days leading up to the beneficiary change that show he was managing his pain well and that he
12  had enough strength to leave his bed to use the restroom and walk around his room. Medical
13  Records 3, ECF No. 43-5. The parties agree that Larry had access to a computer near his bed,
14  and Larry would not have had to move far to log in to his 401(k) account and make the change.
15  See Pompa Decl. ¶¶ 18–19 ("The computer was located within a few feet of Larry's bed"); Roy
16  Lohrengel Depo. 53 ¶¶ 13–25, ECF No. 43-5 (Roy Lohrengel stating that he personally observed
17  a computer near Larry's bed). Roy also admits that he never observed Pompa login or make any
18  changes to Larry's 401(k) plan. Roy Lohrengel Depo. at 53 ¶¶ 20–24. Considering that evidence,
19  Pompa has satisfied her initial burden of production.
20       The burden then shifts to Roy to produce actual evidence to create a genuine issue of
21  material fact that Pompa fraudulently obtained her beneficiary status. To that end, Roy
22  Lohrengel submitted nearly 100 pages of discovery, declarations, and other documents that
23  illustrate his belief that Pompa fraudulently accessed Larry's 401(k) account and listed herself as
24  the beneficiary. While the evidence seems substantial, a brief review of its content reveals that it
25  is all based on Roy's personal speculation that Pompa's beneficiary designation must have been
26  fraudulent because Larry did not know enough about computers to make the change himself. For
27  instance, Roy testified in his deposition that Larry did not know how to use a computer well
28  enough to legitimately change his beneficiary designation. Roy Lohrengel Depo. at 54. When

pressed on how Roy knew that, he claimed that Larry told him but could not recall when Larry had told him. Id. at 57 ¶¶ 5–13. Roy also claimed that Larry did not want any of his money to go to Pompa when he passed. Id. at 65 ¶ 9–12. He supports that claim by alleging that Larry filed a police report against Pompa for stealing his money in early 2012. However, Roy did not produce a copy of the police report or any other proof that Larry distrusted Pompa at all. See id. at 108 ¶¶ 7–25.

Roy also relies heavily upon a letter from Roy's attorney, Jill Hanlon, to Dish Network that reinforces his belief that Pompa's beneficiary designation was fraudulent. The letter echoes Roy's claims that Larry did not own a computer, that he was not computer literate, and that he was not well enough to even sit up on his own the day the beneficiary change was made. Hanlon Letter 82, ECF No. 45-E.[1] The letter also references the supposed police report that Larry filed in 2012. Id. In all, Hanlon concludes that "it is highly unlikely that Larry Lohrengal [sic] decided to name Debra J. Pompa as beneficiary of his retirement account," and even if Lohrengel authorized Pompa to make the change, it would be void under NRS § 155.097's caregiver restriction. Id. As the Court has already found, NRS § 155.097 is preempted here. Hanlon's remaining claims lose their force as they are part of a demand letter that merely regurgitated Roy's claims to Dish Network in an effort to keep Larry's account balance from Pompa. The Hanlon letter does not provide additional first-hand knowledge of Pompa's alleged fraud, nor does it provide any more admissible evidence to support Roy's personal belief that Pompa acted fraudulently.

Taken together, Roy's evidence has not shown more than speculation about his son's beneficiary wishes and Pompa's actions. Such speculation is not enough to survive summary judgment. Roy must have produced evidence, not "speculation or guesswork," that demonstrates actual fraud on Pompa's part. See Guidroz-Brault v. Missouri Pac. R. Co., 254 F.3d 825, 829 (9th Cir. 2001). Further complicating Roy's evidence is that most of what he relies upon here—

---

[1] The Hanlon Letter was part of Roy Lohrengel's exhibit list that was filed together with his motion for summary judgment and not as separate exhibits as the local rules require. See LR IC 2-2(a)(3)(A) (exhibits must be attached as separate files and must not be filed as part of the base document). The letter itself does not have page numbers, so the pin-cited page number here matches the page number assigned by the CM/ECF system.

1  his deposition and his attorney's letter to Dish Network—is made up of self-serving declarations.
2  Of course, declarations are often self-serving as they are intended to support the declarant's
3  position. Nigro v. Sears, Roebuck and Co., 784 F.3d 495, 497 (9th Cir. 2015). However, a self-
4  serving declaration does not automatically create a genuine issue of fact, and the Court may
5  disregard a self-serving declaration that merely states conclusions without admissible facts. Id.
6  That is the case here. Though the declarations all conclude that Pompa committed fraud, they do
7  not adduce any admissible facts that support that. As a result, Roy has not shown more than his
8  own personal doubt about material facts. Matsushita, 475 U.S. at 586. He has not met his burden.
9  Therefore, summary judgment is appropriate here.

### IV.  Conclusion

Accordingly, IT IS HEREBY ORDERED that Debra Pompa's Motion for Summary Judgment (ECF No. 43) is **GRANTED**. The Court finds that Debra Pompa is the sole beneficiary to Larry Lohrengel's Dish Network 401(k) plan under the beneficiary designation dated June 26, 2012.

IT IS FURTHER ORDERED that both Roy Lohrengel and Debra Pompa are enjoined from instituting any further proceeding against Dish Network or any of its subsidiaries arising out of this Interpleader action;

IT IS FURTHER ORDERED that Dish Network be finally discharged from all liability under the plan and dismissed from the action.

The Clerk of the Court is directed to ENTER JUDGMENT in favor of crossclaimant Debra Pompa and against crossclaimant/cross-defendant Roy Lohrengel and to close this case.

Dated this 14th day of May, 2020.

_____
Kent J. Dawson
United States District Judge